JUDGE PATTERSON

'08 CIV 4357

RECEIVED
MAY 08 2008
U.S.D.C. S.D.N.Y.
CASHIERS

John Balestriere (JB-3247)
Craig Stuart Lanza (CL-2452)
**BALESTRIERE LANZA PLLC**
225 Broadway, Suite 2900
New York, NY 10007
Telephone: 212-374-5404
Email: clanza@balestriere.net
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
JANIS BROWN,                            :
                                        :
                                        :      ___-CV-___
            Plaintiff,                  :
                                        :
                                        :
    -against-                           :      COMPLAINT
                                        :
                                        :
THE TOWN OF BEDFORD,                    :
DOE OFFICERS 1-5, MOUNT KISCO           :
DOE OFFICERS 4-6                        :
                                        :
            Defendants.                 :
------------------------------------------------------------x

Plaintiff Janis Brown ("Janis") by her attorney, Craig Stuart Lanza of Balestriere Lanza PLLC, complaining of the Defendants, respectfully alleges as follows:

PRELIMINARY STATEMENT

1.  Bedford Police Officers Doe Officers 1-5 and Mount Kisco Doe Officers 4-6 ("Officer Defendants" or "Officers") beat and illegally arrested Janis Brown ("Janis"), a 47 year old never before arrested, mother and her son Kyle

Brown ("Kyle", together "the Browns"), an electrician, who the Officer Defendants also beat, maced, kicked, and, in front of his mother, threatened to kill. The Defendant Officers, who number as many as a dozen, committed these crimes in their Town's police station late one February Saturday night in 2006 – when no one else save the Officers and the Browns were present – after Janis brought in Kyle to surrender to the Officers for a crime Kyle did not commit. (Indeed, the charges Kyle was arrested for were later dropped). After beating, macing, kicking, mocking, and threatening the Browns, the Officer Defendants delayed their hospitalization for the injuries the Officer Defendants inflicted on them. The Officers then left the Browns in cold cells for hours while the Officers took turns embarrassing them, before finally bringing the Browns to court to be arraigned for crimes they did not commit.

2. Because she was innocent, Janis fought her case and eventually a judge granted her motion to dismiss the case on speedy trial grounds. Kyle continues to maintain his innocence, though he was found guilty at trial of assaulting one of the officers.

3. Janis brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. §1983 for violations of their civil rights, which are secured by statute and the Constitutions of the State of New York and the United States. Janis also asserts supplemental state law tort claims.

## JURISDICTION

4. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

5. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367.

## VENUE

6. Venue is properly laid in the Southern District of New York under U.S.C. §1391(b) because the claims arose in this District.

## JURY DEMAND

6. Janis respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7. Janis, then a 47 year old horse trainer, is a citizen of the United States and, at all relevant times, a resident of North Salem, a town in northern Westchester County in the State of New York.

8. Defendant, Town of Bedford, New York ("Bedford") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9. Bedford maintains the Town of Bedford Police Department ("the Department"), a public authority and police department duly authorized to perform all functions of a police department pursuant to the applicable sections

of the New York State Criminal Procedure Law, acting under the direction and supervision of Bedford.

10. At all times hereinafter mentioned, Doe Officers 1-5 of the Town of Bedford Police Department and Doe Officers 4-6 of the Mount Kisco Police Department were duly sworn police officers of the Department, acting under the supervision of the Department and according to their official duties.

11. At all times hereinafter mentioned, Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the State of New York or the Town of Bedford.

12. Each and all of the acts of Defendants alleged herein were done by said Defendants while acting within the scope of their employment by Defendant Bedford.

13. Each and all of the acts of the individually named Defendants alleged herein were done by said Defendants while acting in furtherance of their employment by Defendant Bedford.

## FACTS

14. On February 11, 2006, at approximately 10:30 p.m., the Browns arrived at the Town of Bedford Police Station, located at 307 Bedford Road, Bedford Hills, New York in order to surrender Kyle to be arrested.

15. The Brown's voluntarily came down of their own accord.

16.  Once Kyle was inside the police station, the Defendant Officers patted Kyle down and two Officers pulled his arms in opposite directions to handcuff him. Kyle was wearing a tight fitting motorcycle jacket with special padding that did not permit his arms to be placed behind his back.

17.  Kyle tried to explain to the Officers that he would unzip his jacket in order to allow the Officers to get Kyle's arms back, but before Kyle could, the Officers threw him on the ground and began beating him with their night sticks.

18.  Seeing her son being beaten, Janis stepped forward to plead with the Officers to stop hurting Kyle. At that point, an Officer grabbed Janis' breasts from behind and she was lifted off the ground. She flung her arms out to get the Officer's hands off her breasts.

19.  Janis turned to look at Kyle as the Officer's beat him. As she did, one Officer Defendant grabbed Janis's left arm and violently pushed it up behind her back.

20.  The same Officer Defendant then pushed Janis into a glass entryway off of the lobby, slammed Janis's, threatened her, yelling that if she did not stop resisting, they would take Kyle in the back room and kill him.

21.  The Officer Defendant then let go of Janis, went back into the lobby, approached Kyle and started beating him with his club. Another Officer Defendant then brought a can of mace and he and three other Officers opened Kyle's mouth, as the mace holding Officer shoved the bottle in Kyle's mouth,

spraying mace down Kyle's throat. Kyle's body went limp and he appeared to be unconscious.

22. The Defendant Officer who first started beating Janis, left Kyle, returned to Janis, grabbed Janis and threw her on the ground. He put his knees and his weight on Janis' back and pushed her face into the floor, cracking her nose and breaking her glasses. He ripped Janis's hands behind her back to handcuff Janis, then pulled her hair, slamming her face into the ground.

23. Janis looked over and believing that Kyle was not breathing, screamed. Janis begged the Officer Defendants to call an ambulance because Kyle and she needed immediate medical attention.

24. An Officer Defendant came over and kicked Janis hard in the ribs before taking out his nightstick and told her that if she did not behave, he would crack Kyle's head open and then crack her head open. Janis lay still on the ground drifting in and out of consciousness.

25. An ambulance finally arrived and on the ride to the hospital, Kyle stopped breathing altogether and an intibation tube had to be placed in his airway.

26. Janis was in the ambulance on a gurney with one set of handcuffs on each hand. At the hospital, a doctor told Janis that she was dehydrated.

27. After drinking about seven cups of water, Janis asked if she could use the bathroom. A female Officer Defendant led Janis to a bathroom in the hallway. There Janis found a toilet overflowing with feces, urine and toilet

paper. The filth was all over the seat as well as the floor. Janis, who was familiar with the hospital, informed the Officer that there was an alternate restroom nearby. The Officer told Janis that she had to use the filthy bathroom. After much pleading on Janis's behalf, the Officer re-handcuffed Janis and led her to a cleaner bathroom.

28. A nurse came soon after and performed three different x-rays on Janis discovering that she had a split shoulder. A nurse put a sling on Janis' left arm. At around the same time, Kyle was brought into see Janis. His voice was raspy, had trouble breathing and he seemed sedated. He was wobbling and having trouble standing up and had to rely on the arm of an Officer to remain upright. Not long after, Kyle was then taken to jail.

29. Janis is hypoglycemic and therefore requires a little food every few hours in order to balance her blood sugar level. After begging the Officers and the nurses for something to eat. An Officer Defendant reluctantly give Janis two saltine crackers. When her heart rate returned to somewhat normal, Janis was taken to Bedford jail in a police car.

30. While in the fingerprint room of the jail, Janis asked for water. An Officer Defendant snorted, "this isn't restaurant." The entire time Janis was in the finger printing area she was handcuffed to the wall with her right arm over her head, while her left arm was in a sling. Janis was placed in a holding cell next to Kyle's. Although she was cold, the Officer Defendant's only gave her a thin blanket.

31. At around 6 in the morning on that Sunday, February 12th, a Defendant Officer ran into the jail area, banging his nightstick against the bars. He yelled at the Browns. At one point, the Defendant Officer tightened Janis's hand-cuffs severely causing great pain. He taunted Janis: "Let me see you cry little girl." He then continued to tighten the cuffs causing extreme pain.

32. Shortly after, the same Defendant who tightened Janis's cuffs, told the Browns to stand up and face forward and to not speak and that the judge was coming. He continued taunting the Browns until the Judge arrived and told him to stop.

33. At the jail, the Judge set bail at $10,000 each for the Browns and they were taken in a van to Valhalla Prison where they remained locked up in cold cells until late Monday afternoon when Janis' husband arrived and bailed out the Browns. Janis called her physician immediately to seek medical attention for all of the injuries she incurred.

34. To this day, Janis lives with the physical and mental injuries which she sustained as a result of the Defendants actions including severe nerve damage to her hands, wrist damages, left shoulder injuries, left pectoral muscles injuries, left breast injuries and left ankle injuries. As a horse trainer, these injuries have severely effected Janis's livelihood.

35. Janis fought the case against her for well over a year until a Judge finally granted her motion to dismiss. She spent a significant amount of money

on attorneys' fees fighting the charges against her. Shortly after Janis's motion was granted, she filed a notice of claim against Bedford.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C § 1983

36.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered 1 through 35 with the same force and effect as if fully set forth herein.

37.     All of the aforementioned acts of Defendants, their agents, servants, and employees, were carried out under the color of state law.

38.     All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and also violated of 42 U.S.C. § 1983.

39.     The acts complained of were carried out by the aforementioned individual Defendants in their capacity as police officers, with all actual and/or apparent authority attendant thereto.

40.     The acts complained of were carried out by the aforementioned individual Defendants in their capacity as police officers, pursuant to the customs, usages, practices, procedures, and rules of the Town of Bedford and the Town of Bedford Police Department, all under the supervision of ranking officers of said Department.

41. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

42. The acts complained of deprived Janis of her rights:

   A. Not to be deprived of liberty without due process of law;

   B. To be free from seizure and arrest not based upon probable cause;

   C. To be free from unwarranted and malicious criminal prosecution;

   D. Not to have excessive force imposed upon her;

   E. Not to have summary punishment imposed upon her; and

   F. To receive equal protection under the law.

## PENDANT STATE CLAIMS

43. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "42" with the same force and effect as if fully set forth herein.

44. On or about November 20, 2007, and within ninety (90) days after the claim herein accrued, Plaintiff duly served upon, presented to and filed with the Town of Bedford Clerk's Office a Notice of Claim setting forth all facts and information required under the General Municipal Law § 50(e).

45. Defendant Bedford has wholly neglected or refused to make an adjustment or payment thereof, and more than thirty days have elapsed since the presentation of such claim.

46. This action was commenced within one year and ninety days after the cause of action herein accrued.

47. Plaintiff has complied with all conditions precedent to maintaining the instant action.

48. This action falls within one or more of the exceptions as outlined in C.P.L.R. § 1602.

## FIRST CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## ASSAULT

49. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered 1 through 48 with the same force and effect as if fully set forth herein.

50. Defendants aforementioned actions placed Janis in apprehension of imminent harmful and offensive bodily contact.

51. As a result of Defendants' conduct, Janis has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

## SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## BATTERY

52. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered 1 through 51 with the same force and effect as if fully set forth herein.

53. Defendant police officers touched Janis in a harmful and offensive manner.

54. Defendants did so without privilege or consent from Janis.

55. As a result of Defendants' conduct, Janis suffered severe bodily injuries, including but not limited to severe nerve damage to the hands, wrist damages, left shoulder injuries, left pectoral muscles injuries, left breast and left ankle injuries. As a horse trainer, these injuries have severely effected Janis's livelihood.

## THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## FALSE ARREST

56. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered 1 through 55 with the same force and effect as if fully set forth herein.

57. Defendant Officers arrested Janis Brown in the absence of probable cause and without a warrant.

58. As a result of the aforesaid conduct by Defendants, Janis was subjected to an illegal, improper, and false arrest by Defendants and were falsely imprisoned, detained, and confined by Defendants.

59. The aforesaid actions by Defendants constituted a deprivation of the Plaintiffs' rights.

### FOURTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
### FALSE IMPRISONMENT

60. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered 1 through 59 with the same force and effect as if fully set forth herein.

61. As a result of the foregoing, Janis was falsely imprisoned, and their liberty was restricted for an extended period of time. They were put in fear for their safety, and were humiliated and subjected to handcuffing and other physical restraints.

62. Janis was conscious of said confinement and did not consent to same.

63. The confinement of the Browns was without probable cause and was not otherwise privileged.

64. As a result of the aforementioned conduct, Janis suffered physical and mental injury, together with embarrassment, humiliation, shock, fright, and loss of freedom.

### FIFTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

65. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered 1 through 64 with the same force and effect as if fully set forth herein.

66. The aforementioned conduct was extreme and outrageous and exceeded all reasonable bounds of decency.

67. The aforementioned conduct was committed by Defendants while acting within the scope of his employment by Defendant Town of Bedford.

68. The aforementioned conduct was committed by Defendants while acting in furtherance of their employment by Defendant Town of Bedford.

69. The aforementioned conduct was intentional and done for the sole purpose of causing severe emotional distress to Plaintiffs.

70. As a result of the aforementioned conduct, Plaintiffs suffered severe emotional distress, mental injury, embarrassment, humiliation, shock, fright, physical injury, and loss of freedom.

## SIXTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## NEGLIGENT HIRING/TRAINING/SUPERVISION/RETENTION

71. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered 1 through 70 with the same force and effect as if fully set forth herein.

72. Defendant The Town of Bedford selected, hired, trained, retained, assigned, and supervised all members of its Police Department, including the Defendants individually named above.

73. Defendant The Town of Bedford was negligent and careless when it selected, hired, trained, retained, assigned, and supervised all members of its Police Department including the Defendants individually named above. Due to

the negligence of the Defendants as set forth above, Plaintiffs suffered physical and mental injury as well as pain and trauma, along with embarrassment, humiliation, shock, fright, and loss of freedom.

74. By reason of the aforesaid conduct by Defendants, Plaintiff requests the following relief:

    A. Compensatory damages in the amount of four million dollars ($4,000,000);

    B. Punitive damages in the amount of four million dollars ($4,000,000);

    C. An award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988, as well as costs and disbursements; and

    D. Any further relief as the Court may find just and proper.

**WHEREFORE**, Plaintiffs demand judgment in the sum of four million dollars ($4,000,000) in compensatory damages, four million dollars ($4,000,000) in punitive damages, plus reasonable attorney's fees, costs, and disbursements of this action.

Dated:      New York, New York
            May 7, 2008

                                    By:    _____
                                           John Balestriere (JB-3247)
                                           Craig Stuart Lanza (CL-2452)
                                           **BALESTRIERE LANZA PLLC**
                                           225 Broadway
                                           Suite 2900
                                           New York, NY 10007
                                           Telephone 212-374-5404